AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Northern District of Georgia

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) | |
| *Plaintiff* ) | |
| v. ) | Civil Action No. 1:24-cv-03774-MHC |
| TANNER S. ADAM, JONATHAN L. ADAM, TRITEN ) | |
| FINANCIAL GROUP, LLC, and GCZ GLOBAL LLC, ) | |
| *Defendant* ) | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

To:   BAM Trading Services, Inc., d/b/a Binance.US

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Exhibit A

| Place: Kristin W. Murnahan<br>US Securities & Exchange Commission, 950 East Paces Ferry Road, N.E., Suite 900, Atlanta, GA 30326 | Date and Time:<br>11/19/2024 9:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

   The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:   10/30/2024

|  *CLERK OF COURT*  | OR | *Kristin W. Murnahan* |
|---|---|---|
| Signature of Clerk or Deputy Clerk | | Attorney's signature |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
U.S. Securities and Exchange Commission                                , who issues or requests this subpoena, are:

Kristin W. Murnahan, 950 E. Paces Ferry Rd., N.E., Ste. 900, Atlanta, Ga. 30326, murnahank@sec.gov, (404) 842-7655

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 1:24-cv-03774-MHC

# PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 .

I declare under penalty of perjury that this information is true.

Date: _____                             _____
                                                                *Server's signature*

                                                  _____
                                                                *Printed name and title*

                                                  _____
                                                                *Server's address*

Additional information regarding attempted service, etc.:

Case 1:24-cv-03774-MHC   Document 15-2   Filed 10/30/24   Page 3 of 18

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
     **(i)** is a party or a party's officer; or
     **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
     **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
     **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*
   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
     **(i)** fails to allow a reasonable time to comply;
     **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
     **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
     **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
     **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
     **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
     **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
     **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
     **(i)** expressly make the claim; and
     **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

EXHIBIT A

A.  **DEFINITIONS & INSTRUCTIONS:**

1. **"BAM Trading Services, Inc., d/b/a Binance.US," "BAM Trading"** or **"Binance.US"** means the entity doing business under the name **"Binance.US,"** a/k/a **"BAM Trading Services, Inc.,"** including parents, subsidiaries, affiliates, predecessors, successors, officers, directors, employees, agents, general partners, limited partners, partnerships and aliases, code names, or trade or business names used by any of the foregoing.

2. Reference to an **Entity** shall also include that entity's corporate parents, subsidiaries, affiliates, predecessors, and successors, as well as trade names, or business names used by, or formerly used by the entity.

3. Reference to a **Person** shall also include that person's trusts, affiliates, employees, agents, partners, and independent contractors, as well as aliases, code names, trade names, or business names used by, or formerly used by, the person.

4. The term **"Document"** means any written, printed, or typed matter including, but not limited to all drafts and copies bearing notations or marks not found in the original, letters and correspondence, interoffice communications, slips, tickets, records, worksheets, financial records, accounting documents, bookkeeping documents, memoranda, reports, manuals, telephone logs, telegrams, facsimiles, messages of any type, telephone messages, voice mails, tape recordings, notices, instructions, minutes, summaries, notes of meetings, file folder markings, and any other organizational indicia, purchase orders, information recorded by photographic process, including microfilm and microfiche, computer printouts, spreadsheets, blockchain identifiers (e.g., hashes, pointers, etc.) to documents stored on a blockchain, and other electronically stored information, including but not limited to writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations that are stored in any medium from which information can be retrieved, obtained, manipulated, or translated.

5. The term "**Activity**" means any transaction, trade, deposit, withdrawal, swap, internal transfer, bid, ask, offer, purchase, sale, redemption, reward, loan, staking, receipt or payment of fees, or any other event captured, recorded, or generated by Binance.US.

6. The term "**Order**" means any request, instruction, notes, or directive to conduct any Activity.

7. The term "C**ommunication**" means any correspondence, contact, discussion, e-mail, instant message, or any other kind of oral or written exchange or transmission of information (in the form of facts, ideas, inquiries, or otherwise)

        and any response thereto between two or more Persons or entities, including, without limitation, all telephone conversations, face-to-face meetings or conversations, internal or external discussions, or exchanges of a Document or Documents.

8. The term "**Concerning**" means directly or indirectly, in whole or in part, describing, constituting, evidencing, recording, evaluating, substantiating, concerning, referring to, alluding to, in connection with, commenting on, relating to, regarding, discussing, showing, analyzing or reflecting.

9. The following rules of construction apply to this attachment:

    a. the functional words "**any**" and "**all**" shall be deemed to include the other functional word;

    b. the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the attachment all responses that might otherwise be construed to be outside of its scope;

    c. the use of the singular form of any word includes the plural and vice versa; and

    d. the term "including" means including, but not limited to.

10. Please put an identifying notation on each page of each document to indicate that it was produced by your bank, produced in this matter, and the page number of all the documents submitted.

11. The term **"Relevant Period"** shall mean the time period beginning with account inception or account application date, whichever is earlier. Please initially produce the items called for in this subpoena from account inception through the date of this subpoena. <u>Thereafter, please produce the items called for in this subpoena that were obtained or created following the date of this subpoena as requested by Commission staff.</u>

**B.    DOCUMENTS TO BE PRODUCED**

1.    Documents sufficient to identify all Biance.US accounts associated with the transactions listed below (the "Transactions"), including:

| Txn Hash | Sending Address | Receiving Address | Amount | Asset | Time Stamp |
|---|---|---|---|---|---|
| 0xc43ce34aaf841fcca9e2d94889ba7b7bab5673806fdd331304d20398573d1dc4 | 0x72D4Ff80Bc4DFaB5184c702aC5F217DeF992b283 | 0xB03Dfe7350e958B9c164E19D754335e4D77943a8 | 500 | USDT | Apr-04-2024 07:51:47 PM UTC |
| 0x6e93dd43bfd7c7dea2e97db5fb9f7ef423b6bff4f5e93a2fcbc4e24d602dae8a | 0x72D4Ff80Bc4DFaB5184c702aC5F217DeF992b283 | 0xB03Dfe7350e958B9c164E19D754335e4D77943a8 | 39,000 | USDT | Apr-04-2024 08:05:59 PM UTC |
| 0x65bb07a19c6b79da448170fd4494ca1decd3f55ea25ab7709a12abb108ee7ab7 | 0xf60c2ea62edbfe808163751dd0d8693dcb30019c | 0x72d4ff80bc4dfab5184c702ac5f217def992b283 | 113.919 | USDT | Jun-21-2024 09:45:59 PM UTC |
| 0x7d7b4893b3c1599338bb7521daf2b8b9bd744ef5d6feb07268a5fe2e547769a3 | 0xf60c2ea62edbfe808163751dd0d8693dcb30019c | 0x72d4ff80bc4dfab5184c702ac5f217def992b283 | 1185.919 | USDT | Jun-21-2024 06:42:59 PM UTC |
| 0x9b3142534372fd4550b2e69aa561348d6d9780d22c8cdd896a857d9a9add12dc | 0xf60c2ea62edbfe808163751dd0d8693dcb30019c | 0x72d4ff80bc4dfab5184c702ac5f217def992b283 | 0.013042 | ETH | Apr-04-2024 07:39:35 PM UTC |
| 0x7ffe64d2399b781b4f01515ba56afee92a93398a556bdf79c3b99ff24b1f699e | 0xf60c2ea62edbfe808163751dd0d8693dcb30019c | 0x18c0cd98a747e1b121cf6995575a555da06dcf26 | 987 | USDT | Dec-19-2023 05:23:35 PM UTC |

a.    For each account identified in response to Request 1 (the "Accounts"), Documents sufficient to identify the holder(s) of the Account, all Binance.US accounts they hold, their current residential or billing address(es), telephone number(s), email address(es), credit card numbers, checking account numbers, and any other financial institution or service used by the Account holder to transfer funds to or from Binance.US.

b.    Documents sufficient to identify IP address(es) used to connect to each Account.

    c.    All account opening Documents or user information for each Account.

    d.    For each Account, Documents sufficient to identify the Account's Binance.US transaction history (including any transactions which were reversed or failed in processing), including, but not limited to, for each transaction, Documents sufficient to identify:

        i. The participating accounts;

        ii. Date and time;

        iii. Transaction identifiers for withdrawals and deposits off of the Account, to include blockchain identifiers such as tx hash, external (non-Account) address, blockchain epoch and/or datetime, and USD estimate prices at the time of the transaction;

        iv. Assets exchanged in orders;

        v. Sum volume of assets in orders, separated by buy and sell;

        vi. USD estimate price(s) of above orders;

        vii. Total transaction count for orders;

        viii. Linked financial institutions, if any, including their names and addresses, and their routing and account number(s) for the origination to, and destination from, Binance.US; and

        ix. Instructions, or memo line or description, associated with the transaction.

2.    All Communications between Binance.US and the holder(s) of each Account.



# U.S. Securities and Exchange Commission

# Data Delivery Standards

This document describes the technical requirements for paper and electronic document productions to the U.S. Securities and Exchange Commission (SEC).   **__Any questions or proposed file formats other than those described below must be discussed with the legal and technical staff of the SEC Division of Enforcement prior to submission.__**

General Instructions ............................................................................................................................. 1

Delivery Formats ................................................................................................................................. 2

    I.   Imaged Productions ................................................................................................................ 3

        1.   Images ............................................................................................................................. 3

        2.   Image Cross-Reference File ............................................................................................ 3

        3.   Data File ......................................................................................................................... 3

        4.   Text ................................................................................................................................. 3

        5.   Linked Native Files ......................................................................................................... 3

    II.   Native File Productions without Load Files ............................................................................. 4

    III.   Adobe PDF File Productions ................................................................................................... 4

    IV.   Audio Files .............................................................................................................................. 4

    V.   Video Files .............................................................................................................................. 4

    VI.   Electronic Phone Records ...................................................................................................... 4

    VII. Electronic Trade and Bank Records ........................................................................................ 4

    VIII. Audit Workpapers ................................................................................................................. 5

    IX. Mobile Device Data  ............................................................................................................... 5

**General Instructions**

<span style="color:red">The current mailing address for all <u>physical productions</u> sent to the SEC is:
**ENF-CPU (U.S. Securities & Exchange Commission), 14420 Albemarle Point Place, Suite 102, Chantilly, VA 20151-1750**</span>

Electronic files must be produced in their native format, i.e. the format in which they are ordinarily used and maintained during the normal course of business.  For example, an MS Excel file must be produced as an MS Excel file rather than an image of a spreadsheet. *(Note:  An Adobe PDF file is <u>not</u> considered a native file unless the document was initially created as a PDF.)*

In the event produced files require the use of proprietary software not commonly found in the workplace, the SEC will explore other format options with the producing party.

The proposed use of file de-duplication methodologies or *computer-assisted review* or *technology-assisted review* (TAR)  during the processing of documents must be discussed with and approved by the legal and technical staff of the Division of Enforcement (ENF).  If your production will be de-duplicated it is vital that you 1) preserve any unique metadata associated with the duplicate files, for example, custodian name and file location and, 2) make that unique metadata part of your production to the SEC.

General requirements for **ALL** document productions are:

1. A cover letter must be included with each production and should include the following information:
    a. Case number, case name and requesting SEC staff member name
    b. A list of each piece of media included in the production with its unique production volume number
    c. A list of custodians, identifying the Bates range for each custodian
    d. A list of redacted documents and the redaction reason
    e. The time zone in which the emails were standardized during conversion
    f. Whether the production contains native files produced from Mac operating system environments
2. Data can be produced on CD, DVD, thumb drive, etc., using the media requiring the least number of deliverables and labeled with the following:
    a. Case number
    b. Production date
    c. Producing party
    d. Bates range (if applicable)
3. All submissions must be organized by **custodian** unless otherwise instructed.
4. All document family groups, i.e. email attachments, embedded files, etc., should be produced together and children files should follow parent files sequentially in the Bates numbering.
5. All load-ready collections should include only one data load file and one image pointer file.
6. All load-ready text must be produced as separate document-level text files.
7. All load-ready collections should account for custodians in the custodian field.
8. All load-ready collections must provide the extracted contents of any container files to ensure all relevant files are produced as separate records.
9. Audio files should be separated from data files if both are included in the production.
10. Only alphanumeric characters and the underscore character are permitted in file names and folder names. Special characters are not permitted.
11. All electronic productions submitted on media must be produced using industry standard self-extracting encryption software.
12. The SEC uses 7zip to access compressed files. Note that the SEC **cannot** accept files that use AES-256 Jpeg or pkAES-256-Cert Deflate compression methods, even if the files are created with 7zip. If you have any questions or need additional information, please reach out to the requesting SEC staff member.
13. Electronic productions of 30 GB or less are strongly encouraged to be submitted via Secure File Transfer. All Secure File Transfers should be sent to the SEC Centralized Production Unit (ENF-CPU@sec.gov) with a CC to the requesting SEC staff member. If you do not have your own Secure File Transfer application, you may reach out to the requesting SEC staff member for a link to the SEC system in order to upload your production. If using the SEC Secure File Transfer system, you will NOT be able to CC individuals outside the SEC on your upload transmission. Note that the SEC **cannot** accept productions made using file sharing sites such as Google Drive or Microsoft Office 365.
14. Productions containing BSA or SAR material must be encrypted. Secure File Transfer applications may be used to produce BSA or SAR material. BSA or SAR material should be segregated and appropriately marked as BSA or SAR, or should be produced separately from other case related records.
15. Passwords for electronic documents, files, compressed archives and encrypted media must be provided separately either via email or in a cover letter apart from the media.
16. All electronic productions should be produced free of computer viruses.
17. Before producing forensically collected images, parties should reach out to the requesting SEC staff member in order to discuss appropriate handling.
18. Before producing unique data sets (large sets of relational data, website reconstruction, chat room data, etc.), parties should reach out to the requesting SEC staff member in order to discuss an appropriate production format.
19. Additional technical descriptions can be found in the addendum to this document.

*Please note that productions sent to the SEC via United States Postal Service are subject to Mail Irradiation, and as a result electronic productions may be damaged.*

**Delivery Formats**

I. **Imaged Productions**
The SEC prefers that all scanned paper and electronic file collections be produced in a structured format including industry standard load files, Bates numbered image files, native files and searchable document-level text files. Bates numbers should not contain spaces. Hyphens ( - ) and underscores ( _ ) are acceptable.

1. **Images**
    a. Black and white images must be 300 DPI Group IV single-page TIFF files
    b. Color images must be produced in JPEG format
    c. File names cannot contain embedded spaces or special characters (including the comma)
    d. Folder names cannot contain embedded spaces or special characters (including the comma)
    e. All image files must have a unique file name, i.e. Bates number
    f. Images must be endorsed with sequential Bates numbers in the lower right corner of each image
    g. The number of image files per folder should not exceed 2,000 files
    h. Excel spreadsheets should have a placeholder image named by the Bates number of the file
    i. AUTOCAD/photograph files should be produced as a single page JPEG file

2. **Image Cross-Reference File**
The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format:
    *ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount*

3. **Data File**
The data file (.DAT) contains all of the fielded information that will be loaded into the database.

    a. The first line of the .DAT file must be a header row identifying the field names
    b. The .DAT file must use the following *Concordance®* default delimiters:
        Comma ¶ ASCII character (020)
        Quote þ ASCII character (254)
    c. If the .DAT file is produced in Unicode format it must contain the byte order marker
    d. Date fields should be provided in the format: mm/dd/yyyy
    e. Date and time fields must be two separate fields
    f. The time zone must be included in all time fields
    g. If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments
    h. An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES. Do not include the text in the .DAT file.
    i. For productions with native files, a LINK field must be included to provide the file path and name of the native file on the produced storage media. The native file must be named after the FIRSTBATES.
    j. BEGATTACH and ENDATTACH fields must be two separate fields
    k. A complete list of metadata fields is available in **Addendum A** to this document

4. **Text**
Text must be produced as separate document-level text files, not as fields within the .DAT file. The text files must be named per the FIRSTBATES/Image Key and the full path to the text file (OCRPATH) should be included in the .DAT file. Text files may be in either ANSI or Unicode format, however, ALL text files must be in the same format within the same production. Note that productions containing text with foreign characters must produce text files in Unicode format to preserve the foreign characters. Text files must be in a separate folder, and the number of text files per folder should not exceed 2,000 files. There should be no special characters (including commas) in the folder names. For redacted documents, provide the full text for the redacted version.

5. **Linked Native Files**
Copies of original email and native file documents/attachments must be included for all electronic productions.
    a. Native file documents must be named per the FIRSTBATES number
    b. The full path of the native file must be provided in the .DAT file for the LINK field
    c. The number of native files per folder should not exceed 2,000 files

II. **Native File Production without Load Files**
With prior approval, native files may be produced without load files. Native file productions should not be Bates numbered. Native files must be produced as they are maintained in the normal course of business and organized by custodian-named file folders. Native email files (.PST or .MBOX) must be separated by custodian.

III. **Adobe PDF File Production**
With prior approval, Adobe PDF files may be produced in native file format.
   1. All PDFs must be unitized at the document level, i.e. each PDF must represent a discrete document.
   2. PDF files should be produced in separate folders named by the custodian. The folders should not contain any special characters (including commas).
   3. All PDF files must contain embedded text that includes all discernible words within the document, not selected text or image only. This requires all layers of the PDF to be flattened first.
   4. If PDF files are Bates endorsed, the PDF files must be named by the Bates range.

IV. **Audio Files**
Audio files from telephone recording systems must be produced in a format that is playable using Microsoft Windows Media Player™. Additionally, the call information (metadata) related to each audio recording MUST be provided. The metadata file must be produced in a delimited text format. Field names must be included in the first row of the text file. The metadata must include, at a minimum, the following fields:

   1) Caller Name:         Caller's name or account/identification number
   2) Originating Number:  Caller's phone number
   3) Called Party Name:   Called party's name
   4) Terminating Number:  Called party's phone number
   5) Date:                Date of call
   6) Time:                Time of call
   7) Filename:            Filename of audio file

V. **Video Files**
Video files must be produced in a format that is playable using Microsoft Windows Media Player™.

VI. **Electronic Phone Records**
When producing an MS Excel spreadsheet for electronic phone records, provide the files in the following format:

   1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. Data must be formatted in its native format (i.e. dates in a date format, numbers in an appropriate numerical format, and numbers with leading zeroes as text).
      a. The metadata that must be included is outlined in **Addendum B** of this document. Each field of data must be loaded into a separate column. For example, Date and Start_Time must be produced in separate columns and not combined into a single column containing both pieces of information. Any fields of data that are provided in addition to those listed in **Addendum B** must also be loaded into separate columns.

VII. **Electronic Trade and Bank Records**
When producing electronic trade records, bank records, or financial statements, provide the files in one of the following formats:

   1. MS Excel spreadsheet with header information detailing the field structure. If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. The fields and information that must be included are outlined in **Addendum C** of this document.

   2. Delimited text file with header information detailing the field structure. The preferred delimiter is a vertical bar "|". If any special codes exist in the dataset, a separate document must be provided that details all such codes. If details of the field structure do not fit in the header, a separate document must be provided that includes such details. The fields and information that must be included are outlined in **Addendum C** of this document.

**VIII. Audit Workpapers**

The SEC prefers for workpapers to be produced in two formats: (1) With Bates numbers in accordance with the SEC Data Delivery Standards; and (2) in native format via laptop computer, web-based viewing platform, or otherwise, allowing for viewing in the same format and organization as the firm's audit team. Prior to production of workpapers via laptop computer or web-based viewing platform, audit firms should contact the requesting SEC staff member for additional information and written agreements addressing use of software, access, and viewing protocols.

**IX. Mobile Device Data**

Before producing any mobile device data (including but not limited to text messages and application data) parties should reach out to the requesting SEC staff member in order to discuss the appropriate production format. Productions containing chat data from applications must be identified at the time of production and the following information must be provided to the requesting SEC staff member and the SEC Centralized Production Unit: chat application, chat data format, and how the length of a chat is determined (i.e. set duration of time, number of minutes without messages, etc.)

# ADDENDUM A

The metadata of electronic document collections should be extracted and provided in a .DAT file using the field definition and formatting described below:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email<br>**The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email<br>**This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments<br>**The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided<br>Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email<br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion.<br>Native: (empty)<br>**This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion.<br>Email: Time zone<br>Native: (empty) |

U.S. Securities and Exchange Commission
Data Delivery Standards

| | | |
|---|---|---|
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty)<br>Native: Last Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |
| TIME_CREATED/TIME_ZONE | 10:25 AM GMT | Email: (empty)<br>Native: Time the document was created including time zone<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last modified including the time zone<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last accessed including the time zone<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| PRINTED_DATE | 10/12/2010 | Email: (empty)<br>Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email:  original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email:  Unique Message ID<br>Native: (empty) |

7

| HEADER | Return-Path: <example_from@dc.edu> X-SpamCatcher-Score:1[X] Received:from[136.167.40.119] (HELO dc.edu) by fe3.dc.edu (CommuniGate Pro SMTP4.1.8) with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; Mon, 23 Aug 2004 11:40:10 -0400 Message-ID: <4129F3CA.2020509@dc.edu> Date: Mon, 23 Aug 2005 11:40:36 -400 From: Taylor Evans <example_from@dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1) Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-Version:1.0 To: Jon Smith <example_to@mail.dc.edu> Subject:Business Development Meeting Content-Type: text/plain;charset=us-ascii; format=flowed Content-Transfer-Encoding:7bit | Email: The email header information Native: (empty) |
|---|---|---|
| SHA256 | AD6128C5CA40164AF71A1EFC800E12D2F195CE07BB5F8C813B0888A2DDE6A06F | SHA-256 hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

**Sample Image Cross-Reference File:**

```
IMG0000001,,E:\001\IMG0000001.TIF,Y,,,
IMG0000002,,E:\001\IMG0000002.TIF,,,,
IMG0000003,,E:\001\IMG0000003.TIF,,,,
IMG0000004,,E:\001\IMG0000004.TIF,Y,,,
IMG0000005,,E:\001\IMG0000005.TIF,Y,,,
IMG0000006,,E:\001\IMG0000006.TIF,,,,
```

# ADDENDUM B

For Electronic Phone Records, include the following fields in separate columns:

**For Calls:**

1) Account Number
2) Connection Date – Date the call was received or made
3) Connection Time – Time call was received or made
4) Seizure Time – Time it took for the call to be placed in seconds
5) Originating Number – Phone that placed the call
6) Terminating Number – Phone that received the call
7) Elapsed Time – The length of time the call lasted, preferably in seconds
8) End Time – The time the call ended
9) Number Dialed – Actual number dialed
10) IMEI Originating – Unique id to phone used to make call
11) IMEI Terminating– Unique id to phone used to receive call
12) IMSI Originating – Unique id to phone used to make call
13) IMSI Terminating- Unique id to phone used to receive call
14) Call Codes – Identify call direction or other routing information
15) Time Zone – Time Zone in which the call was received or placed, if applicable

**For Text Messages:**

1) Account Number
2) Connection Date – Date the text was received or made
3) Connection Time – Time text was received or made
4) Originating Number – Who placed the text
5) Terminating Number – Who received the text
6) IMEI Originating – Unique id to phone used to make text
7) IMEI Terminating– Unique id to phone used to receive text
8) IMSI Originating - Unique id to phone used to make text
9) IMSI Terminating- Unique id to phone used to receive text
10) Text Code – Identify text direction, or other text routing information
11) Text Type Code – Type of text message (sent SMS, MMS, or other)
12) Time Zone – Time Zone in which the call was received or placed, if applicable

**For Mobile Data Usage:**

1) Account Number
2) Connection Date – Date the data was received or made
3) Connection Time – Time data was received or made
4) Originating number – Number that used data
5) IMEI Originating – Unique id of phone that used data
6) IMSI Originating - Unique id of phone that used data
7) Data or Data codes – Identify data direction, or other data routing information
8) Time Zone – Time Zone in which the call was received or placed, if applicable

9

# ADDENDUM C

For electronic account transaction data in MS Excel spreadsheet file format, or in a delimited text file format with a preferred vertical bar delimiter, include the following (or similar) fields of information in **columnar form** and in **separate tabs** of the spreadsheet/delimited text file:

A. **Account Information Tab**
   Listing of accounts produced showing the following:
   1. Account Title
   2. Account Address
   3. Account Number
   4. Account Type
   5. Taxpayer Identification #
   6. Account Open Date
   7. Account Closed Date
   8. Account Owners/Signatories
   9. Relationship (e.g., CEO, CFO, officer, treasurer, founding member, account owner, etc.)

B. **Account Transaction Information Tab**
   Download of transaction data for all accounts produced showing the following:
   1. Account Number
   2. Transaction ID #
   3. Transaction Type (e.g., deposit, withdrawal, check, incoming wire, outgoing wire, ACH transaction, account transfer, account fee, cashiers check, etc.)
   4. Transaction Post Date
   5. Transaction Date
   6. Transaction Amount
   7. Transaction Amount Code (e.g., debit or credit)
   8. Check#
   9. Transaction Description (e.g., payor/payee of transaction, name of merchant/business or individual receiving or depositing funds, etc.)
   10. Account Balance

C. **Detail Information Tab for Wire Transfers, ACH Transactions, and Other Bank/Account Transfers**
   Download of additional information concerning any of the transactions in Section B, related to any wire transfer, ACH transaction, and other bank/account transfer transaction information showing the following or similar information:
   1. Account Number
   2. Transaction Reference #
   3. Transaction Date (date that transaction posts to an account)
   4. Transaction Type (e.g., incoming/outgoing wire, incoming/outgoing ACH transaction, incoming/outgoing other bank/account transfer, etc.)
   5. Transaction Amount
   6. Transaction Amount Code (e.g., debit or credit)
   7. Originator Name
   8. Originator Address
   9. Originator ID / Bank Acct# (bank account# of the debit/payor side of the wire)
   10. Beneficiary Name
   11. Beneficiary Address
   12. Beneficiary ID / Bank Acct# (bank account# of the credit/payee side of the wire)
   13. Debit ID (bank name and address for debit/payor side of transaction)
   14. Credit ID (bank name and address for credit/payee side of transaction)

15. Originator to Beneficiary Information
16. Bank to Bank Instruction
17. Other available wire transaction information captured by bank that is not referenced above

**D. <u>Legend Tab</u>**

Listing of any codes used or contained in the information provided above.