# EXHIBIT A

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

SECURITIES AND EXCHANGE
COMMISSION

   Plaintiff,

v.

TANNER S. ADAM, *et al.*,

   Defendants, and

AVA A. ADAM, *et al.*,

   Relief Defendants.

Civil Action No. 1:24-cv-03774-VMC

## DECLARATION OF JONATHAN L. ADAM

I, Jonathan L. Adam, declare as follows:

1. I am a defendant in this action. I submit this declaration in support of Defendants' and Relief Defendants' Opposition to Plaintiff Securities and Exchange Commission's Motion for Final Judgments and Remedies (the "Opposition"). I have personal knowledge of the facts set forth in this declaration and, if called as a witness, could and would testify competently to them.

### Background and Role

2. I am the owner and managing member of GCZ Global LLC ("GCZ").

**Relationship with Group Gemini International Capital, S.A. ("GGP")**

3.    On or about May 25, 2023, I entered into a written "Partnership and Confidentiality Agreement" (the "GGP Agreement") with Group Gemini International Capital, S.A. ("GGP").

4.    GGP is identified as a Panamanian entity in the GGP Agreement and as a corporation, registered under Public Registry number 73248/2019 and headquartered in Panama.

5.    A true and correct copy of the GGP Agreement is attached hereto as **Exhibit 1**.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___March 15th___, 2026, at ___518 Bryan St. Angleton, TX 77515___

_____
Jonathan L. Adam

2

4935-1826-8568, v. 1

# EXHIBIT 1

# PARTNERSHIP AND CONFIDENTIALITY AGREEMENT

Part 1:

GROUP GEMINI INTERNATIONAL CAPITAL, S.A., a business entity registered under Public Registry number 73248/2019, on February 21, 2019, with headquarters in PANAMA, herein represented by the two expansion directors of the company GROUP GEMINI INTERNATIONAL CAPITAL, S.A.

THOMAZ JEFF ALVAREZ, Single, resident and domiciled in BRAZIL, holder of Passport No. 42151F751D

GERSON DE CARVALHO, Married, resident and domiciled in BRAZIL, holder of Passport No. 478S214V49

Part 2:

JONATHAN ADAM, resident and domiciled in the UNITED STATES OF AMERICA, Single, ENTREPRENEUR

Part 1 and Part 2 of this Agreement are collectively referred to as the "Parties" and individually as a "Party."

Considering the decision of the above-identified Parties to establish clauses and conditions to regulate the exchange, use, and protection of confidential information that one Party ("Disclosing Party") may disclose to the other Party ("Receiving Party") for the purposes set forth in this document,

The Parties hereby agree to enter into this Confidentiality Agreement ("Agreement") under the following clauses and conditions:

## CONFIDENTIAL INFORMATION

Clause 1. For the purposes of this Agreement, regardless of the actual execution of contracts or any other agreements or arrangements between the Parties, all information disclosed as a result of discussions or negotiations between the Parties regarding the business at hand, or originating from each Party, and not known to the general public, whether of technical, commercial, or any other nature, whether tangible or intangible, shall be considered as confidential information ("Confidential Information"). Therefore, subject to these terms, all information exchanged between the Parties shall be protected by this Agreement, and the Receiving Party shall consider as Confidential Information even information without any identification of confidentiality.

Clause 2. Confidential Information may be transmitted by any means and without any specification or identification of confidentiality, including but not limited to physical means (e.g., printed documents, manuscripts, facsimile, electronic messages (email), photographs, etc.) or any form recorded in electronic media, such as tapes, laser discs, floppy disks (or any other magnetic media); orally; summaries, notes, and any oral or written comments.

Clause 3. For the purposes of this Agreement, (i) "Affiliates" mean (a) companies that directly or indirectly control a Party, (b) companies directly or indirectly controlled by a Party, (c) companies that are directly or indirectly controlled by a company that controls such Party, or (d) any other company under common or shared control, directly or indirectly, by such Party or the controller of such Party.

Clause 4. The concept of Confidential Information includes trade secrets, know-how, and information related to technology, clients, professional projects, promotional and marketing activities, finances, and other professional information, including but not limited to any patented or non-patented information of a technical, operational, commercial, legal nature, inventions, processes, formulas, and designs, patentable or not, business plans, accounting methods, techniques and accumulated experiences, commercial plans, budgets, prices, expansion plans, commercial strategies, discoveries, ideas, concepts, techniques, projects, specifications, diagrams, models, samples, flowcharts, computer programs, disks, floppy disks, tapes, marketing and sales plans, customer names, and other technical, financial, legal, and/or commercial information transmitted to the Receiving Party.

## PURPOSE

Clause 5. The Receiving Party may use the Confidential Information for the specific purpose of fulfilling the negotiations between the Parties, for the eventual conclusion of agreements, contracts, or arrangements between the Parties, not limited to, but especially for negotiations and eventual contracts entered into between the Parties.

Clause 5.1. The Receiving Party shall restrict the knowledge and use of the Confidential Information to the professionals of the company who are necessary for the conduct of the work related to the purpose of

fulfilling the negotiations between the Parties. On this occasion, the Parties undertake to inform these employees of the confidentiality obligation established herein.

Clause 6. This Agreement does not imply any obligation of future hiring. It is solely intended to regulate the negotiation phase between the Parties, as stated in the clause above. The termination of any contract to be concluded between the Parties does not release them from the confidentiality aspect assumed in this Agreement.

**OWNERSHIP**

Clause 7. All Confidential Information shall remain the exclusive property of the Disclosing Party, and the Receiving Party shall not be entitled to claim any rights related to copyrights, patents, trademarks, or any similar registrations of confidential information owned by the Disclosing Party.

USE AND TREATMENT OF CONFIDENTIAL INFORMATION

Clause 8. The Receiving Party is obligated not to disclose any of the Confidential Information to third parties without the prior consent of the Disclosing Party, who shall take all necessary precautions to prevent unauthorized use, publication, or dissemination of the Confidential Information.

Clause 9. The Receiving Party shall take measures to prevent the disclosure of the Confidential Information to third parties, exercising the same diligence and care as it would with its own equally important Confidential Information. The Parties agree that all Confidential Information will be kept by the Receiving Party in a secure location with limited access to employees, consultants, or agents of the Receiving Party or its Affiliates who need such Confidential Information for the purpose of this Agreement. The Receiving Party shall be responsible for maintaining the confidentiality of the aforementioned Parties, and shall obtain written commitment to the terms of this Agreement from its consultants, agents, and Affiliates. Such formality is unnecessary for its employees, as the Receiving Party is directly responsible for maintaining their confidentiality.

**OBLIGATIONS**

Clause 10. Mr. JONATHAN ADAM, hereinafter referred to as a partner of the company GROUP GEMINI INTERNATIONAL CAPITAL, S.A., owning a 10% share of the corporation.

Clause 10.1. Mr. JONATHAN ADAM, all financial contributions made to GROUP GEMINI INTERNATIONAL CAPITAL, S.A., from May 25, 2023, to June 30, 2033, will have a daily yield of 1.78%. The profit from the yield can be requested for withdrawal through the system and will be credited to the designated digital wallet as indicated in the system. After the specified date, the yield will be reevaluated and adjusted in a contractual addendum.

Clause 10.2. The distribution of net profits of the company GROUP GEMINI INTERNATIONAL CAPITAL, S.A. will be conducted on a weekly basis. A movement report will be presented, and all partners will analyze the amount to be withdrawn.

Clause 10.3. After confirmation from both parties, the corresponding amount will be sent to Mr. JONATHAN's digital wallet.

**EXCEPTIONS**

Clause 11. The restrictions set forth in this Agreement for the exchange, use, and protection of Confidential Information shall not apply to information that: (i) Has been or becomes publicly available or enters the public domain, provided that such disclosures were not caused in any way by the Receiving Party's fault; (ii) Was in the lawful possession of the Receiving Party free of any confidentiality obligations prior to its disclosure by the Disclosing Party; (iii) Is identified by the Disclosing Party as no longer being confidential.

Clause 11.1. The Receiving Party is prohibited from disclosing to third parties, without the prior express written consent of the Disclosing Party, information that has been developed based on the Confidential Information, as well as developing products, methods, or services based on both the Confidential Information and other information and knowledge obtained in the process of business development, action, or procedure agreed upon by the Parties.

Clause 11.2. If the Receiving Party is required by law, regulation, court order, or government authority with the power to do so to disclose any Confidential Information, the Receiving Party shall promptly notify the Disclosing Party in writing prior to such disclosure, so that the Disclosing Party may seek a court order or other remedy from the appropriate authority to prevent the disclosure. The Receiving Party undertakes to cooperate with the Disclosing Party in obtaining such court order or other remedy to prevent the disclosure.

The Receiving Party also agrees that if the Disclosing Party is not successful in its attempt to avoid the obligation to disclose the Confidential Information, it will disclose only the portion of the Confidential Information that is legally required and will make its best efforts to obtain reliable assurances that confidential treatment will be given to the disclosed Confidential Information.

DURATION AND TERM

Clause 12. This Agreement shall commence on May 25, 2023 and shall have a term of 120 months, with the contract terminating on May 25, 2033.

COMMUNICATION BETWEEN THE PARTIES

Clause 13. Any communication required or authorized under this Agreement from one Party to the other shall be delivered digitally to the parties involved, with acknowledgment of receipt.

Clause 13.1. Communication may also take place through electronic means and shall be confirmed in writing within 48 (forty-eight) hours, with the delivery of the duly registered original document, signed by the legal representative of the Party, if applicable.

**PENALTIES**

Clause 14. In the event of termination due to non-compliance with any of the clauses of this Agreement by either Party, after granting a period of 3 (three) days to remedy the breach, if unsuccessful, the breaching Party shall be liable to pay a fine in the amount of US $2,000,000.00 dollars.

Clause 14.1. Failure to comply with any of the confidentiality provisions set forth in this Agreement shall subject the breaching Party, as well as the causing or facilitating agent, by action or omission of any of those acts related to this Agreement, to the payment or compensation of all proven losses and damages suffered by the other Party, including moral or competitive damages, as well as respective civil and criminal liabilities, which shall be determined in a regular judicial or administrative process.

**GENERAL PROVISIONS**

Clause 15. No license, right to exploit trademarks, inventions, copyrights, patents, or intellectual property rights are implied, included, or granted through this Agreement, or through the exchange of confidential information between the Parties.

Clause 16. The Disclosing Party shall have no responsibility for the decisions made by the Receiving Party based on Confidential Information disclosed under this Agreement.

Clause 17. This Agreement binds, in addition to the contracting Parties, their successors, regardless of the form of succession, in all rights and obligations assumed by virtue of this Agreement. It is also emphasized that this Agreement represents the complete understanding between the Parties regarding the subject matter herein, and shall prevail over any prior verbal or written understandings on the same subject matter.

Clause 18. This Agreement establishes various mutual obligations between the Disclosing Party and the Receiving Party, but no provision herein shall be construed as aiming to establish joint liability between the Parties arising from or related to the same.

Clause 19. Neither Party may assign or otherwise transfer, in whole or in part, the Agreement or any rights arising therefrom, without the prior written consent of the other Party, except if such assignment or transfer is made to an Affiliate, solely for the purpose of achieving the objectives of this Agreement.

Clause 20. It is expressly and irrevocably established that the waiver by either Party to exercise any right or privilege conferred by the Agreement or the agreement to a delay in the performance of obligations by the other Party shall not affect those rights or privileges, which may be exercised at any time and at its sole discretion, and shall not alter the conditions stipulated in the Agreement.

Clause 21. Neither Party shall disclose the existence of the terms of the Agreement or the discussions that led to the Agreement, or the fact that there have been or will be discussions or negotiations covered by it, except by mutual understanding between the Parties or as required by law.

Clause 22. This Agreement may only be amended by written agreement between the Parties, through the execution of an addendum, and any tolerance shall not constitute a novation. It represents the entire agreement between the parties regarding its subject matter, superseding any prior oral or written understandings.

Clause 23. The Agreement shall be governed by the laws of PANAMA, and the Parties hereby elect the jurisdiction of the District of PANAMA as competent to settle any disputes arising from the Agreement, waiving any other jurisdiction, no matter how privileged.

Clause 24. All signatories acknowledge that this Agreement is fully valid in electronic format, and it is considered equivalent to a physical document for all legal purposes. The signatories, in accordance with

Article 10, Section 2 of Provisional Measure No. 2,200-2 of August 24, 2001, recognize and declare that the electronic signature of this Agreement on the RocketSign platform is the mutually agreed means to prove authorship and integrity of the instrument, and give it full legal effect as if it were a physical document.

Thus, the Parties, in mutual agreement regarding the matters herein, declare it fair and binding, and digitally sign this Agreement to produce all legal effects.

São Paulo, 26 de Maio de 2023.

**ACORDANTE 1:**

THOMAZ JEFF ALVAREZ

GERSON DE CARVALHO

**ACORDANTE 2:**

JONATHAN ADAM

**TESTEMUNHAS:**

WILSON LEONARD SHURDEL