**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>TANNER S. ADAM, JONATHAN L. ADAM, TRITEN FINANCIAL GROUP, LLC, and GCZ GLOBAL LLC,<br><br>Defendants, and<br><br>AVA A. ADAM, GARRETT L.W. ADAM, ROBERT S. ADAM, CARRIE L. ADAM, EMILIO F. HINOJOSA, AND VIRGINIA I. HINOJOSA,<br><br>Relief Defendants. | Civil Action File No.<br>1:24-cv-03774-VMC |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTION FOR HEARING ON PLAINTIFF'S MOTION FOR REMEDIES**
**AND FOR ENTRY OF DEFAULT JUDGMENTS**

Plaintiff Securities and Exchange Commission (the "Commission") submits

this Opposition to the Motion of Defendants Tanner S. Adam, Jonathan L. Adam

(collectively the "Adam Brothers"), Triten Financial Group ("Triten"), and GCZ

Global LLC ("GCZ") for a hearing on Plaintiff's Motion for Remedies Against

Defendants and For Default Judgments against Relief Defendants Ava A. Adam, Garrett L.W. Adam, Robert S. Adam, Carrie L. Adam, Emilio F. Hinojosa, and Virginia L. Hinojosa (collectively "Relief Defendants").  The Commission does not believe a hearing is necessary because there are no factual disputes to be resolved. Rather, Defendants' response only raises legal questions, namely whether certain expenses qualify as legitimate and thus should be deducted from total funds raised when calculating disgorgement.  The briefs adequately address these issues.

In requesting that the Court grant a hearing to determine the appropriate remedies to impose against Defendants and the Relief Defendants, Defendants acknowledged that the remedies sought by the Commission do not require "sum-certain calculations."  [Dkt. No. 50 at 2.]  The Commission need only present a reasonable approximation of Defendants' ill-gotten gains, and then the burden shifts to Defendants to establish that the Commission's calculation is "unreasonable."  *SEC v. Zada*, 787 F.3d 375, 382 (6th Cir. 2015).

Because the Commission used investor deposits as its starting point for calculating disgorgement, the only issue for this Court to determine is whether Defendants have established that they are entitled to the deductions they request.  *See SEC v. AmeriFirst Funding, Inc.*, 2008 WL 1959843, at *2 (N.D. Tex. May 5, 2008), citing *SEC v. Manor Nursing Ctrs., Inc.,* 458 F.2d 1082, 1104 (2d Cir. 1972) ("[T]he proper starting point for a disgorgement award is the total proceeds received from the

2

sale of the securities."). As set forth in the Commission's briefs in support of its motion, the Commission did not deduct the amounts identified by Defendants because it does not believe they constitute legitimate business expenses under the rubric set forth in *SEC v. Liu*, 591 U.S. 71, 91 (2020). Defendants contend they should be deducted for the reasons set forth in their brief. The resolution of this dispute does not require an evidentiary hearing because it is a question of law.

Despite this, Defendants argue that a hearing is necessary so that they can present oral argument and expert testimony on the very subjects that they have already argued in their brief and presented expert testimony on through declarations. Absent from their motion is any representation that they intend to present factual evidence supporting the deduction they seek.[1] In the absence of such a representation, it is unclear the purpose of the requested evidentiary hearing.

Defendants have presented four expert declarations in response to the Commission's motion. One declaration sets forth Defendants' calculation of investor deposits and payments as well as Defendants' purported business expenses. [Dkt.

---

[1] Defendants' experts necessarily had to rely on representations made by Defendants or their counsel when determining how to characterize transactions, but unless Defendants testify at the hearing, there will be no way for the Commission to probe the factual basis of the expert's testimony. Allowing such testimony without requiring Defendants to provide evidentiary support for the assumptions made by their experts would be improper.

3

No. 47-2.]  There is very little dispute between Defendants' calculations and the Commission's calculations.  The primary issue that the Commission raises in response to this declaration concerns how Defendants' expert categorizes certain transactions.

As set forth in the April 2, 2026 Declaration of Krysta M. Cannon, attached as Exhibit 1 to the Commission's reply brief in support of its Motion for Remedies and Default Judgments, the Commission has reviewed every transaction identified by Defendants to determine why there is a variation between the disgorgement number calculated by the Commission and the one presented by Defendants.  For each transaction giving rise to a variance, Ms. Cannon's declaration explains in detail why she categorized the transaction in the manner she did.  [Dkt. No. 56-1.]  The major variances arise from the Commission's treatment of transfers to the crypto exchanges, finders fees, and claimed business expenses as not deductible from investor losses.  [*Id*. at ¶¶ 6, 7, 42-44, 68 & Ex. A.]  As discussed in the Commission's briefs, resolution of whether to deduct these categories from disgorgement turns on a legal question of whether they constitute legitimate business expenses.

The rest of the variances turn on analysis of whether there was sufficient evidentiary support to categorize a transaction as an investor deposit or an investor payment.  [*Id*. at ¶¶ 40, 54, & 56.]  Most of the decisions made by the Commission

4

were based on the evidence it had available to it from bank records.  [*Id*. at ¶ 16.]

Defendants have provided no additional factual evidence in connection with their

response brief, so except for a few occasions identified in Ms. Cannon's declaration,

the Commission maintains that its characterization of the transaction is reasonable.

[*Id*. at ¶ 56.]  It is thus Defendants' burden to establish that the Commission's

position on those transactions is unreasonable.  They have not met that burden and

should not be permitted to delay resolution of this matter by seeking a hearing for the

purpose of offering oral argument and expert testimony.

For example, Defendants contend that over $800,000 in business expenses

should be deducted.  [Dkt. No. 47 at 19.]  The Commission takes no issue with the

calculation of those expenses.  Instead, it challenges the legitimacy of those expenses

because Defendants have presented no factual evidence to demonstrate how those

expenses "have value independent of fueling a fraudulent scheme."  *See Liu*, 591

U.S. at 92.  Defendant's expert testimony will not help the Court resolve that issue

because the expert has relied on representations made by Defendants about the

purpose of those expenses.  And Defendants' motion makes no mention of

Defendants' taking the stand and explaining how those expenses benefited investors.

The remaining three declarations are related to Defendants' transfer of investor

funds to a third-party.  [Dkt. Nos. 47-3 – 47-5.]  The Commission's calculation of net

transfers of investor funds to this third party is slightly less than the amounts

calculated by two of Defendants' experts, though their calculations also differ.  [Dkt. No. 56-1 at ¶ 6.]  The variance between the Commission's calculation and the calculations of both of Defendants' experts is due to the fact that the Commission's calculations were based solely on bank records and documents produced to the Commission by Coinbase and Kraken.  [Dkt. No. 2-4 at ¶¶ 12-14.]  Defendants' experts appear to have analyzed movements between wallets on the crypto exchanges.  The Commission could not perform a similar analysis because Defendants have never provided any transparency into their crypto transactions.

Nevertheless, the Commission does not dispute that Defendants transferred investor money to third parties via crypto exchanges.  The Commission, however, does not agree that those transfers should be deducted as legitimate business expenses.  Resolution of this issue turns on a question of law, not fact, making an evidentiary hearing unnecessary.

Defendants also contend that a hearing is necessary to introduce evidence that they have subpoenaed from third parties.  At most, those documents will show that Defendants have a legitimate legal claim against the third party for the funds they

voluntarily transferred to it.  Such a showing, however, cannot insulate Defendants from the harm they caused by misrepresenting how they were using investor funds.[2]

The Commission shut down Defendants' fraudulent scheme in August 2024. There is no dispute that investors lost millions of dollars as a result of Defendants' egregious misconduct.  While Defendants and Relief Defendants have enjoyed the fruits of Defendants' fraud, harmed investors have been waiting for justice in terms of a final judgment.  Because the Commission's motion is ripe for resolution and can be fairly and reliably resolved based solely on the briefs and supporting declarations, the Commission respectfully requests that the Court deny Defendants' request for a hearing on the Commission's motion.

---

[2] As noted in Defendants' motion, those subpoenas were served contemporaneously with filing their response to the Commission's motion as well as their motion for an evidentiary hearing on the Commission's motion.  Defendants have known since this case was instituted that the Commission was entitled to disgorgement, prejudgment interest and civil penalties because they consented to judgments stating that fact. And the Commission's motion for remedies and default judgment was pending for five and a half months before Defendants' response was due.  Yet, Defendants chose to wait until the day their response was due to send subpoenas to third parties for information they now contend is relevant to the resolution of the Commission's motion.  Defendants offer no explanation for their choice to delay seeking the subpoenaed information until after their response was filed.  Regardless, any evidence produced in response to those subpoenas will not be relevant to resolving the Commission's motion for remedies and default judgments.

If the Court determines that a hearing is appropriate, the Commission respectfully requests that the hearing be set promptly and that it be limited to addressing any factual questions the Court may have about the evidentiary record.

Respectfully submitted, this 2nd day of April 2026,

*/s/ Kristin W. Murnahan*
M. Graham Loomis
Supervisory Trial Counsel
United States Securities & Exchange Commission
950 E. Paces Ferry Road NE, Suite 900
Atlanta, GA 30326
404-842-7622
Georgia Bar No. 457868
loomism@sec.gov

Kristin W. Murnahan
Senior Trial Counsel
United States Securities & Exchange Commission
950 E. Paces Ferry Road NE, Suite 900
Atlanta, GA 30326
404-842-7655
Georgia Bar No. 759054
murnahank@sec.gov

COUNSEL FOR PLAINTIFF

## CERTIFICATION OF COMPLIANCE

This is to certify that the foregoing was prepared using Times New Roman 14 point font in accordance with Local Rule 5.1 (B).


*/s/ Kristin W. Murnahan*
Kristin W. Murnahan
Senior Trial Counsel

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of this Court using the CM/ECF system which will send notice of such filing to counsel of record.

This 2nd day of April 2026.


                                        */s/ Kristin W. Murnahan*
                                        Kristin W. Murnahan