# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

SECURITIES AND EXCHANGE
COMMISSION

        Plaintiff,

v.

TANNER S. ADAM, *et al.*,

        Defendants, and

AVA A. ADAM, *et al.*,

        Relief Defendants.

Civil Action No. 1:24-cv-03774-VMC

**DEFENDANTS' AND RELIEF DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR HEARING ON PLAINTIFF'S MOTION FOR REMEDIES AND DEFAULT JUDGMENT**

Defendants and Relief Defendants (collectively, the "Responding Parties") respectfully file this Reply in Support of their Motion for Hearing ("Hearing Motion") to consider the SEC's Motion for Remedies and Default Judgment, ECF 29-1 ("Remedies Motion"), the Responding Parties' Opposition in Response, and corresponding declarations and evidence showing the Court as follows:

## INTRODUCTION

The SEC attempts to frame the parties' dispute as a pure question of law that can be resolved on declarations alone. It is not. The SEC's own submission

acknowledges that the outcome turns on how specific transactions are categorized, whether certain payments were legitimate business expenses under *Liu v. Sec. & Exch. Comm'n*, 591 U.S. 71, 92 (2020), and how complex transfers—particularly involving cryptocurrency and third parties—should be traced and categorized. Those are patently fact-intensive issues for this Court to decide following a hearing and a fulsome presentation of the evidence.

The Responding Parties do not seek to litigate liability.[1]  They ask only for a focused evidentiary hearing so the Court can fairly resolve material factual disputes that directly affect the size and structure of any monetary relief.  Far from demonstrating that no hearing is necessary, the SEC's Opposition underscores why live testimony and cross-examination are appropriate here.  The SEC insists the Responding Parties have offered "no factual evidence" for their categorizations and expense claims, while simultaneously attacking the Responding Parties' experts and ignoring conflicting analyses.  This is precisely the scenario where courts hold a hearing before imposing substantial equitable and quasi-punitive remedies.

A narrowly tailored evidentiary hearing—limited to disputed categories of transactions, expense deductions, and other factual issues—would address the SEC's concerns about efficiency while assisting the Court with ensuring that any remedies

---

[1] In the interest of resolving this situation promptly, Defendants consented to having their assets frozen, *see* ECF 6, and are anxious to have the Court decide the amount of monetary relief, if any, and resolve this matter expeditiously.

comply with *Liu* and basic principles of due process.  Accordingly, the Court should grant the Responding Parties' request.

## ARGUMENT

### I.    Due Process Warrants an Evidentiary Hearing.

In light of the nature of the relief requested, the Responding Parties respectfully request that the Court exercise its discretion appropriately to allow an evidentiary hearing.  The Eleventh Circuit's landmark decision in *Sec. & Exch. Comm'n v. Smyth* squarely holds that when the disgorgement figure is contested and represents only a "reasonable approximation"—rather than a sum certain[2]—Federal Rule of Civil Procedure 55(b)(2) mandates the Court hold an evidentiary hearing to determine the appropriate amount.  420 F.3d 1225, 1230 (11th Cir. 2005).  "Basic notions of due process underpin this requirement" and "[t]he fundamental requisite of due process of law is the opportunity to be heard."  *Id.* at 1232 (internal citation

---

[2] The SEC incorrectly argues that Defendants do not challenge its starting point for calculating disgorgement.  ECF 57 (Pl.'s Opp. to Hearing Motion ("Opp.")) at 2; ECF 56 (Pl.'s Reply in support of Remedies Motion ("Remedies Reply")) at 5.  Not so.  Defendants plainly ask this Court to reject the SEC's initial calculation by "limiting any disgorgement to each Defendant's net profits, not net lender (or 'investor') losses."  ECF 47 (Defs.' Response to Motion for Remedies ("Remedies Opp.")) at 11; *see id.* at 21 ("SEC's [initial] calculation constitutes a gross overreach as it is, in substance, a measure of net investor losses").

and quotation marks omitted).  As a result, the default is that "such hearings are *required* in all but limited circumstances[.]" *Id.* at 1233 n.13 (emphasis added).[3]

Because "[D]efendant[s] contest[] the calculation of a disgorgement award and prejudgment interest and request[] a hearing to resolve this dispute," the Hearing Motion should be granted.  *See, e.g.*, *Commodity Futures Trading Comm'n v. Amerman*, 645 F. App'x 938, 943 (11th Cir. 2016) (finding "a district court may abuse its discretion in declining to hold [an evidentiary hearing]" under the circumstances); *Sec. & Exch. Comm'n v. Calmes*, No. 09-80524, 2011 WL 13174658, at *2 (S.D. Fla. Nov. 10, 2011) ("The threshold question for the Court is whether the Court can determine the amount of disgorgement owed by Defendants upon the papers, or whether an evidentiary hearing is required.").

Here, the SEC seeks over $36 million in disgorgement, interest, and civil penalties, *see* Remedies Motion at 17, claiming that every dime of "investor"—in truth, lenders—loss resulted in ill-gotten gains by the Responding Parties and that

---

[3] This case does not fall within the "limited circumstances" justifying a paper-only determination—such as where the court already has a "wealth of evidence" making further proof "*truly unnecessary*," or where the information is *legally irrelevant* or no hearing is even requested.  *See Smyth*, 420 F.3d at 1233 n.13 (emphasis added); *see, e.g.*, *Sec. & Exch. Comm'n v. Aerokinetic Energy Corp.*, 444 F. App'x 382, 384–85 (11th Cir. 2011) (non-testimonial record sufficient where defendants neither requested evidentiary hearing nor objected to paper proceeding).  Here, the Responding Parties vigorously contest the SEC's "reasonable approximation" and dispute its categorization and tracing of major business-related transactions, including crypto transfers and third-party payments.  Remedies Opp. at 8–9.

the pre-judgment interest and civil penalties should be assessed based on the SEC's "reasonable approximation" alone, *see* Opp. at 2.  The Responding Parties challenge the SEC's accounting and represent that at least $17,858,700 should, instead, be considered net investor losses—not Defendant's ill-gotten gains[4]—and that Defendants' legitimate business expenses be adjudicated as deductible under the *Liu* framework.  Remedies Opp. at 25–26.  Moreover, each Defendant's Consent Judgment (the "Consent Judgments") provides that the Court "shall determine the amounts of the disgorgement and civil penalty upon motion of the Commission" and offer the possibility of a "hearing held on such motion[.]"  *See, e.g.*, ECF 9 (Consent J. as to Def. J. Adam) at 5–6.

Thus, since the Responding Parties have not admitted the Complaint's allegations as to amount and expressly reserved the right to contest disgorgement, pre-judgment interest, and civil penalties, the Court should hold an evidentiary hearing on the Remedies Motion.  *See Smyth*, 420 F. 3d at 1232–33 (no papers-only proceeding where consent decree language provided defendant "shall pay disgorgement and pre-judgment interest in amounts to be resolved upon motion of the Commission at a later date").

---

[4] The SEC relied entirely on Defendants' bank records and documents produced by Coinbase and Kraken and ignored the value held by Defendants at a Layer 2 Crypto Exchange.  *See* Opp. at 6.  This skips a crucial analysis required for determination of any disgorgement.  Thus, an evidentiary hearing is necessary.

## II.     Factual Disputes Remain for the Court's Determination.

Because factual issues abound, a hearing is both necessary and will prove helpful here.  Courts routinely require evidentiary hearings when there are genuine disputes of fact.  *See, e.g.*, *Sec. & Exch. Comm'n v. Megalli*, 157 F. Supp. 3d 1240, 1254–55 (N.D. Ga. 2015) (finding genuine fact issue as to reasonable approximation of defendant's gains from insider trading violations and deferring determination of appropriate amount of disgorgement to evidentiary hearing).[5]

Here, the SEC wrongly contends that a hearing is unnecessary because "there are no factual disputes to be resolved" and that the Responding Parties' response only raises legal questions.  Opp. at 2.[6]  On the contrary, the record is replete with multiple factual issues the Court must assess.  *See id*. at 8 (conceding that a hearing should be "limited to addressing any factual questions the Court may have").

---

[5] *See also, e.g.*, *Sec. & Exch. Comm'n v. New*, No. 18-CV-03975, 2021 WL 4451896, at \*2 (S.D. Ind. Sept. 29, 2021) (holding that unresolved factual disputes regarding the calculation of net profits—including the legitimacy and documentation of claimed business expense deductions under *Liu* standard—were sufficient to require an evidentiary hearing); *Sec. & Exch. Comm'n v. Novus Techs., LLC*, No. 2:07-CV-235-TC, 2010 WL 4180550, at \*13 (D. Utah Oct. 20, 2010) (finding genuine factual dispute regarding whether defendants used investor money for personal expenses and deferring decision as to appropriate remedies to evidentiary hearing).

[6] Indeed, the SEC wrongly argues that lender payments are not deductible because they are purportedly "finders fees."  Remedies Reply at 7.  Defendants have presented evidence contradicting that assertion in that such payments were actually fiat repayments and net crypto payments made to lenders.  *See* Remedies Opp. at 24–25 (showing $4,061,810 in payments made to lenders).

*First*, determining whether a cost is a "legitimate business expense" is a fact-specific inquiry, not merely a "question of law," as the SEC suggests. *Id.* at 3.  In *Liu*, the Supreme Court established that "courts must deduct legitimate expenses before ordering disgorgement[,]" reasoning that a rule to the contrary that "make[s] no allowance for the cost and expense of conducting [a] business would be inconsistent with the ordinary principles and practice of courts[.]"  591 U.S. at 91–92.  Applying these principles, courts consistently treat the identification of specific legitimate business expenses as a factual question, not purely a legal one.  *See, e.g.*, *Sec. & Exch. Comm'n v. Spartan Sec. Grp., Ltd.*, 164 F.4th 1231, 1272 (11th Cir. 2026) (no abuse of discretion where district court conducted item-by-item review of disputed expenses); *Sec. & Exch. Comm'n v. Jones*, No. 21-CV-98, 2022 WL 17882114, at *2 (N.D. Ga. July 7, 2022) (finding certain expenses as legitimate while disallowing others for lack of proof under a factual inquiry).[7]  Even the exception to expense deductions—where an entire enterprise is found to be fraudulent—is in itself a factual determination.  *See Sec. & Exch. Comm'n v. Complete Bus. Sols. Grp., Inc.*, No. 22-13811, 2023 WL 4196949, at *2 (11th Cir. June 27, 2023) (finding no abuse in discretion where court conducted a "thorough

---

[7] *See also, e.g.*, *Sec. & Exch. Comm'n v. Miller*, 806 F. Supp. 3d 520, 532 (D. Md. 2025) (to establish payments are legitimate business expenses, defendant "must provide 'concrete and credible evidence' that demonstrates the value of the expenses and proves that the expenses furthered a legitimate business purpose").

accounting" of defendant's ownership interests and disbursements before determining which expenses qualified as legitimate deductions).

Since whether certain business expenses are legitimate is a question of fact, courts routinely hold evidentiary hearings and, in many instances, lower the amount of the SEC's sought-after disgorgement. *See, e.g.*, *Spartan Sec. Grp., Ltd.*, 164 F.4th at 1249–50 (finding third-party fees for courier services, printing, and regulatory fees were all legitimate business expenses following evidentiary hearing); *Sec. & Exch. Comm'n v. Complete Bus. Sols. Grp., Inc.*, No. 20-CV-81205, 2024 WL 4826059, at *12 n.14 (S.D. Fla. Nov. 18, 2024) (concluding operational expenses, including "everything from janitorial supplies to computer stuff[,]" were legitimate business expenses post-hearing) (internal quotation marks omitted), *appeal dismissed*, No. 25-10183-JJ, 2025 WL 2046559 (11th Cir. May 5, 2025), and *aff'd*, No. 22-13853, 2025 WL 1639323 (11th Cir. June 10, 2025).  Where courts hold evidentiary hearings, live testimony has repeatedly proven determinative. *See, e.g.*, *Sec. & Exch. Comm'n v. Torchia*, 183 F. Supp. 3d 1291, 1316–19 (N.D. Ga. 2016) (describing "helpful" expert and lay witness testimony and court's assessment of witness credibility in deciding fault); *Spartan Sec. Grp., Ltd.*, 164 F.4th at 1252 (upholding decision to admit live expert testimony in SEC enforcement action involving microcap securities fraud scheme).  The Court should take the same

approach and hold an evidentiary hearing to analyze the competing views of the SEC's and the Responding Parties' experts as to Defendants' business expenses.[8]

*Second*, the SEC's position throughout this case has failed to fully apprise the Court of the factual realities of Defendants' business operation, instead somewhat ineloquently construing it as a classic Ponzi scheme. To start, the SEC's press release states that "[t]he SEC alleges that, in reality, the lending pool as described to investors did not exist, and the defendants instead used millions of dollars of investor funds to pay supposed returns to existing investors and to support their lavish

---

[8] In its Opposition, the SEC incorrectly argues that, since Defendants submitted four expert declarations with their Opposition to the Remedies Motion, any additional testimony at a hearing would be redundant. Opp. at 3–4. But the written expert declarations are not substitutes for live testimony where experts can fully explain their methodologies, respond to questions from the Court and opposing counsel on cross examination, and address the SEC's characterizations in real-time. *See Sec. & Exch. Comm'n v. Terraform Labs Pte. Ltd.*, 708 F. Supp. 3d 450, 468 (S.D.N.Y. 2023) (admitting defendants' rebuttal expert's live testimony critiquing SEC's damages model where expert had considered necessary evidence and SEC could cross-examine him—a key benefit of live testimony). The Responding Parties seek to cross-examine the SEC's Senior Accountant, Krysta Cannon, on her analysis supplied in support of the Remedies Motion. And the complex nature of cryptocurrency transactions and determination of whether business expense categorizations are "legitimate" requires interactive examination only an evidentiary hearing can provide. The Responding Parties strongly believe the Court would benefit from an opportunity to question experts directly about their analyses, especially given the technical nature of the transactions. *Sec. & Exch. Comm'n v. Putnam*, No. 2:20-CV-00301, 2024 WL 4135684, at *7 (D. Utah Sept. 10, 2024) (addressing crypto expert testimony in context of disgorgement calculations).

lifestyles."[9]  The SEC has carried this sentiment throughout the case, most recently in its Remedies Reply, stating: "Defendants told investors that as soon as their money was invested it would be deployed into a bot controlled by Defendants," and "Defendants never told investors that their money would be transferred to wallets controlled by a third party nor did Defendants tell investors that the third party would have access to investor funds to do with what they wanted."  Remedies Reply at 2, 6.  But this narrative completely—and wrongly—disregards the realities of Defendants' business operation and the role Grupo Gemini International, S.A. ("GGP") played.[10]  GCZ's "bot" did not receive funds, but instead was software used by a third party to validate and derisk crypto arbitrage trades the third-party's customers proposed to execute.

Moreover, as described more fully in the Remedies Opposition, Defendants told lenders that it was Triten's or GCZ's funds that would be sent as cryptocurrency and moved into wallets supplying value verification liquidity to the GGP lending pool, and that fees from this arrangement and GCZ's validation bot would flow

---

[9] Press Release of U.S. Sec. & Exch. Comm'n, <u>SEC Charges Brothers Jonathan and Tanner Adam with $60 Million Ponzi Scheme,</u> U.S. Sec. & Exch. Comm'n (Aug. 26, 2024), https://www.sec.gov/newsroom/press-releases/2024-107.

[10] Astonishingly, the SEC, faced with information by the Responding Parties regarding the role GGP played and two other ongoing FBI investigations involving wallets allegedly used by GGP, has not once inquired about GGP much less investigated the company.

through wallets back to Triten or GCZ as U.S. dollars which they could then use to service debt. Remedies Opp. at 12–13. Defendants documented these arrangements with lenders through promissory notes containing above-market interest rates or lending agreements with Triten. This includes, in one case, a $17 million purchase-and-sale and corresponding technology services agreement between GCZ and Bliss Creek Fund 1 LLC ("Bliss Creek"), whereby Bliss Creek purchased positions from GCZ in the GGP flash lending pool. *See id.* at 13 (discussing lenders entering into promissory notes or lending agreements with Triten). Taken together, these facts are irreconcilable with the SEC's effort to portray Defendants' business as a Ponzi scheme and instead demonstrate a disclosed, structured lending arrangement involving GGP as reflected in the evidentiary record.[11] As to the information that Defendants told their lenders about GGP, the Responding Parties would call representatives from Defendants' pool of lenders and finders (including Carl Mehlman, Clint Evans, Joe Malone, R.J. Sykes, Dan Byler, and Andrew Lake) and individuals from Bliss Creek (including Bill Towler who signed the agreements with GCZ), to detail the amount paid to such individuals and information provided.

---

[11] The SEC appears to have improperly conflated the GGP "Lending Pool" with the separate group of lenders to Triten (referred to by the SEC as "Investors"), even though those lenders were never part of the GGP "Lending Pool." Remedies Reply at 3. This definitional error requires clarification at an evidentiary hearing and, once corrected, is likely to materially affect the SEC's overall analysis.

*Third*, the SEC claims that Defendants had "unfettered access to investor funds[.]" Remedies Reply at 18–19. Yet, the SEC admits that it did not conduct a crypto currency analysis like the one completed by the Responding Parties' experts, claiming its limited review was due to "Defendants hav[ing] never provided any transparency into their crypto transactions." Opp. at 6.[12] Neither assertion is accurate. Responding Parties' experts demonstrated that funds were transferred to GGP and the funds left the custody of his wallet and went to a separate wallet controlled by a separate set of private keys. *See* ECF 47-3 at 3–6 (showing blockchain analysis by Kevin Strenski). Moreover, certain of the Defendants' counsel have agreed to testify or submit sworn declarations confirming that, during their meet and confer with the SEC, they provided the SEC with materials demonstrating the exact transactions Defendants shared with the Court in its Opposition to the Remedies Motion. Specifically, screenshots and validator logs capturing cryptocurrency transactions were shared with the SEC and FBI, along with

---

[12] The SEC's Opposition is notable not only for what it says, but for what it pointedly omits. Despite positioning itself as the market's self-described guardian of "full and fair disclosure" and the purported arbiter of truth in the digital asset space, the SEC offers no engagement with—let alone rebuttal of—the detailed cryptocurrency transaction analyses that Defendants' experts placed squarely before it in Defendants' Opposition to the Remedies Motion. *See* Remedies Opp. at 19–26; ECF Nos. 47-2, 47-3, 47-4, 47-5 (Expert Reports). The SEC's decision to proceed as if this evidence does not exist, while asking the Court to impose severe remedies based on an incomplete factual narrative, creates at minimum the appearance that the SEC seeks to obscure from the Court information that undermines its requested relief, rather than to assist the Court in reaching a fully informed, accurate result.

the production of a PowerPoint presentation by Nardello & Co. materially similar to the presentation attached as Exhibit 1 to the Declaration of the Responding Parties' expert, Mr. Kevin Strenski.  *See* ECF 47-3 at 7–19.

In lieu of taking the SEC's deficient analysis at face value, the Court should hold a hearing to factor in the cryptocurrency analysis to credit both the growth that the Defendants' crypto wallets enjoyed (which results in a materially different disgorgement determination—a critical component of any disgorgement analysis) and the losses Defendants sustained as a result of GGP's disappearance.

## III.   The Relief Defendants Should Have an Opportunity to Be Heard.

The hearing will also allow the Relief Defendants—from whom the SEC seeks to disgorge hundreds of thousands of dollars and to strip them of their homes without identifying any wrongdoing on their part—to finally have their day in Court. The SEC has the burden of showing that a relief defendant received funds traceable to an underlying violation and has "no legitimate claim" to those funds.  *Sec. & Exch. Comm'n v. Donnan*, No. 12-CV-2831, 2014 WL 11829334, at *8 (N.D. Ga. Sept. 15, 2014).  Here, the SEC has made no such showing and Relief Defendants request the hearing to demonstrate that they have a legitimate claim to their homes, making disgorgement improper.  *Sec. & Exch. Comm'n v. Sun Cap., Inc.*, No. 209-cv-229-FTM-29SPC, 2009 WL 1362634, at *2 (M.D. Fla. May 13, 2009) (denying SEC's asset freeze motion following oral argument because relief defendants had legitimate

ownership interest in loan proceeds).  To address this point, the Relief Defendants (specifically Ava Adam, Emilio Hinojosa, and Robert Adam) are available to testify regarding their legitimate claim to their homes, including investments they personally made in purchasing or improving the properties.[13]

## IV.    Discovery and the Hearing Motion Are Not Intended to Delay.

Finally, the Hearing Motion is not meant for purposes of delay.  While the SEC emphasizes that investors have "been waiting for justice" and suggests any hearing would cause undue delay, Opp. at 7, that is inaccurate.

Initially, any delay in the resolution of this matter was the result of the Parties engaging in a meaningful meet and confer process, including exchanging documents in an effort to reach resolution, which was ***ordered by the Court***.  ECF 41 at 5 (ordering Parties "to meet and confer on an agreed form of final judgment"); ECF 42 ¶¶ 11–13 (requesting unopposed extension of time as Parties met and conferred, "exchanged—and continue to exchange—significant productions of documents and information," and "[we]re productively negotiating towards a resolution").

---

[13] The SEC contends that, even if the Relief Defendants were to show improvements or investments in their homes, a constructive trust over the homes would still be appropriate.  Remedies Reply at 17 n.4.  But relief defendants who provide "some value that is more than nominal in exchange for an asset" retain "a rightful claim to that asset, even if some accounting could suggest they obtained it at a discount." *Sec. & Exch. Comm'n v. Sanchez-Diaz*, 88 F.4th 81, 92 (1st Cir. 2023).

Moreover, the SEC wrongly argues that the Responding Parties seek to "delay resolution of this matter." Opp. at 5. The Responding Parties seek only a targeted hearing—tailored to the factual issues that matter most to the calculation of any monetary relief, including but not limited to, those discussed above and any other inquiries the Court may have—and agree with the SEC's request for a "prompt[]" hearing. *Id.* at 8.[14] Ensuring that any monetary relief is accurate, equitable, and consistent with *Liu* justifies the modest additional time required for a focused hearing. To that end, the Responding Parties propose that two weeks prior to the date the Court sets for a hearing, the Parties exchange lists of factual issues that the Court needs to address and a list of witnesses to be called.

## CONCLUSION

For the foregoing reasons, the Responding Parties respectfully request that the Court grant their Motion for Hearing.

---

[14] The SEC criticizes the timing of the Responding Parties' third-party subpoenas, *see* Remedies Reply at 7 n.2, but the Court authorized discovery without any deadline, *see* ECF 9 at 6. The Responding Parties reasonably sought third-party evidence after the SEC finally identified the transactions it deemed "ill-gotten," over a year after filing the Complaint, and finally disclosed its flawed disgorgement figure—at which point the detailed analysis the Responding Parties now present became necessary and would be further informed by the subpoenaed materials.

Respectfully submitted, this 16th day of April, 2026.

**TROUTMAN PEPPER LOCKE LLP**

*/s/ Mary M. Weeks*
Mary M. Weeks
Georgia Bar No. 559181
Derek Centola
Georgia Bar No. 749911
Hannah L. Baskind
Georgia Bar No. 276384
600 Peachtree Street, N.E., Suite 3000
Atlanta, Georgia 30308
T: 404-885-3000
F: 404-885-3900
mary.weeks@troutman.com
derek.centola@troutman.com
hannah.baskind@troutman.com

Patrick Clendenen (admitted *pro hac vice*)
**PRACTUS, LLP**
555 Long Wharf Drive
New Haven, CT 06511
T: 203-212-9046
patrick.clendenen@practus.com

*Counsel for Defendants Tanner S. Adam, Jonathan L. Adam, Triten Financial Group, LLC and GCZ Global LLC and Relief Defendants Ava A. Adam, Garrett L.W. Adam, Robert S. Adam, Carrie L. Adam, Emilio F. Hinojosa, and Virginia I. Hinojosa*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Northern District of Georgia Civil Local Rule 7.1.D, I certify that the foregoing document was prepared in Times New Roman 14-point font, in compliance with Local Rule 5.1.C.

*/s/ Mary M. Weeks*
Mary M. Weeks
mary.weeks@troutman.com
Georgia Bar No. 559181

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which automatically serves notification of such filing to all counsel of record.

This 16th day of April, 2026.

*/s/ Mary M. Weeks*

Mary M. Weeks
mary.weeks@troutman.com
Georgia Bar No. 559181
