# EXHIBIT L

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br><br>Plaintiff,<br><br>v.<br><br>TANNER S. ADAM, *et al.*,<br><br>Defendants, and<br><br>AVA A. ADAM, *et al.*,<br><br>Relief Defendants. | Civil Action No. 1:24-cv-03774-VMC |

### Declaration of Kevin Strenski

I, Kevin Strenski, hereby declare as follows:

1.     I am a Senior Analyst at Nardello & Co. LLC , a global investigations firm.  As a member of the Financial Investigations & Forensic Accounting practice group, I am responsible for conducting investigations into cryptocurrencies and other digital assets in the context of civil, criminal or regulatory proceedings.

2.     I respectfully submit this declaration on behalf of Jonathan Adam.  I submit this declaration based on my personal knowledge and my investigation of the facts herein.  If called as a witness, I could and would testify completely to them.

3.     I have five years of experience in the investigations field and, more specifically, three years of experience conducting blockchain investigations.  Prior

to joining Nardello & Co., I was a Blockchain Analyst and Cyber Threat Analyst at the DoD Cyber Crime Center (DC3). I have traced and analyzed billions of dollars in blockchain transaction flows, including money laundering perpetrated by transnational organized crime syndicates, non-state hacktivists, and other cybercriminals. I have tracked and attributed transactions through sophisticated obfuscation techniques, including bridges, mixers, and decentralized exchange platforms. I am an active member of the anti-money laundering community and hold industry-recognized certifications, including Certified Anti-Money Laundering Specialist (CAMS), Chainalysis Reactor Certification, and Chainalysis Investigations Specialist Certification.

4. In the course of my professional career, I have reviewed and analyzed over one hundred Know Your Customer ("KYC") disclosures and returns produced by Binance in response to legal requests.

5. Based on my experience, records produced by Binance pursuant to such requests typically identify, by true name, the individual or individuals who exercised control over the relevant Binance account. This information can include personally identifiable information such as the account holder's email address, phone number, photographs, and scans of government-issued identification documents, including passports or driver's licenses, as well as the account holder's date of birth.

2

6. In addition to identifying information, Binance KYC disclosures and returns typically include a detailed history of fiat currency activity associated with the account. This includes records of fiat deposits and withdrawals, as well as information identifying linked bank accounts used to purchase cryptocurrency or to convert cryptocurrency proceeds back into fiat currency.

7. Binance KYC disclosures and returns also typically include records of all cryptocurrency activity associated with the account, including deposits into and withdrawals from the account across supported blockchains. In my experience, these records further include transaction-level information sufficient to trace the movement of assets into and out of the Binance platform.

8. In addition, Binance records generally include logs reflecting trading and swapping activity conducted within the Binance platform itself. This may include spot trading activity, internal asset swaps, and transactions executed through Binance's internal peer-to-peer functionality.

9. Binance records further typically include device and access information associated with the account. This information commonly includes IP address logs for login attempts, as well as device-related metadata such as device identifiers, operating system versions, and related technical details for devices used to access the account over time.

10. Based on my experience, the information described above would be expected to assist in determining several key issues, including: (a) the identity of the individual or individuals who controlled the Binance account used to process funds associated with Grupo Gemini International Capital, S.A. ("GGP"); (b) the scope and scale of GGP's operations, including whether additional blockchains or counterparties were involved; (c) whether trading activity was conducted using those funds; and (d) the ultimate destination of funds received by GGP.

11. CoinPayments is not a cryptocurrency exchange and may not maintain the same breadth of compliance or customer information as Binance. However, CoinPayments may maintain records sufficient to identify the account used to process transactions. Such records may include basic identifying account information, account activity logs, and a ledger reflecting transactions conducted through the CoinPayments account. This information would be expected to assist in determining several key issues, including: (a) the identity of the individual or individuals who controlled the Coinpayments account used to process funds associated with GGP; (b) the scope and scale of GGP's operations, including whether additional blockchains or counterparties were involved; (c) whether trading activity was conducted using those funds; and (d) the ultimate destination of funds received by GGP.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___May 8th___, 2026, at ___Geneva Switzerland___.

**Kevin Strenski** Digitally signed by Kevin Strenski
Date: 2026.05.08 22:17:25
+02'00'

Kevin Strenski